**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

ERIKA PRYSZMONT,                  *

                                        *

       *Plaintiff,*

v.

                                        *       **Civil Case No: 1:22-cv-02792-JMC**

ALLSTATE VEHICLE AND
PROPERTY INSURANCE
COMPANY,                  *

       *Defendant.*

                                        *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Erika Pryszmont, filed the present lawsuit on October 28, 2022, against Defendant, Allstate Vehicle and Property Insurance Company, alleging breach of contract (Count I) and failure to settle claims in good faith (Count II).  (ECF No. 1).  Before the Court is Defendant's Motion for Summary Judgment.  (ECF No. 42).  The motion is fully briefed (ECF Nos. 51, 53, 56, 59) and no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2023).[1] For the reasons explained below, Defendant's motion will be granted.

---

[1] Defendant also submitted a "Supplemental Motion for Summary Judgment" "given the Plaintiff's untimely filed 'Supplemental Discovery Disclosures' the day after the Defendant filed its Motion for Summary Judgment."  (ECF No. 51).  The Court previously noted in light of that filing that it would treat Defendant's initial and "supplemental" motion as one joint motion and permitted Plaintiff to respond accordingly.  (ECF No. 53).

I.     **BACKGROUND**

Both parties agree that, at all times relevant to Plaintiff's claims, Plaintiff owned a townhouse in Gwynn Oak, Maryland. (ECF No. 42-1 at 1; ECF No. 56 at 2).[2] Plaintiff's residence was insured by Defendant under a House and Home Policy numbered "998454377" (the "Policy"). *Id.* Plaintiff contacted Defendant on June 23, 2021, to report that the exterior of Plaintiff's home was purportedly damaged by a storm which occurred on or around June 14, 2021. *Id.*

On June 27, 2021, "a third party vendor hired by the Defendant, Patriot Claim Consultants ('Patriot'), inspected the insured residence and took photographs during that inspection." (ECF No. 42-1 at 2; ECF No. 56 at 2). "During Patriot's physical inspection, a claim representative employed by Defendant simultaneously virtually inspected the insured residence with Patriot using a video conferencing device" and took various screenshots of the damage to Plaintiff's residence. (ECF No. 42-3 at 1). Pursuant to that inspection by Patriot, Defendant discovered six wind-damaged shingles on Plaintiff's roof and a small water stain on the ceiling of an upstairs bedroom. (ECF No. 42-1 at 2; ECF No. 56 at 2). Those photographs are provided in the record. *See* (ECF No. 42-4 at 1–34; ECF No. 42-5 at 1–45). Defendant prepared a repair estimate for the damages totaling $870.66, which "was less than the Policy's all peril deductible in the amount of $1,000.00." (ECF No. 42-1 at 2; ECF No. 56 at 2). Accordingly, no payment was issued to Plaintiff for the damaged shingles and water stain. *Id.*

On June 28, 2021, Plaintiff hired Joseph L. Kriner of Semper Fi Public Adjusters ("Semper Fi") to represent her regarding her homeowner's insurance claim. *Id.* Plaintiff then submitted an estimate from Semper Fi on September 20, 2021, in the amount of $121,696.75. *Id.* Overall,

---

[2] When the Court cites to a particular page number or range, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of each electronically filed document.

Semper Fi estimated that Plaintiff's residence sustained damages worth $121,696.75, including estimates for "garment & soft goods cln," "cleaning," "content manipulation," "general demolition," "drywall, "electrical" damages, "electrical – special systems" damages, "framing and rough carpentry," "heat, vent & air conditioning," "insulation," "masonry," "painting," "roofing," "scaffolding," "siding," "soffit, fascia, & gutter," "window reglazing & repair," and "windows – wood." (ECF No. 42-8).

Mr. Kriner also observed "damage to the insulation, drywall/plaster" in one of Plaintiff's bedrooms. Dep. of Joseph Kriner at p. 70. Upon inspecting Plaintiff's attic after noticing such damage, Mr. Kriner further observed "Water on the underlayment, on the underside . . . of the roof system." *Id.* at 71. Mr. Kriner opined that this existed only "where the storm-created opening was," suggesting that the insulation and drywall/plaster damage resulted from the storm. *Id.* Additional inspection of the insulation revealed to Mr. Kriner that "It appeared to be asbestos" based on his "previous encounters and experience." *Id.* at 73; *see also id.* at 88 ("I'll let you know that based on my experience in the field, that that insulation looks like, smells like, has all the same characteristics of asbestos insulation."). According to Mr. Kriner, he attempted to have an asbestos testing company or an industrial hygienist inspect Plaintiff's residence, but Defendant "refused to pay for a hygienist and denied a hygienist to come out to the property." *Id.* at 74. These observations were provided for in the resulting Semper Fi estimate, which included various line items for "invoices" from Rapid Restoration ("Rapid"), including an invoice in the amount of $38,704.00 to remediate the supposed asbestos located in Plaintiff's residence. (ECF No. 42-1 at 3). Mr. Kriner also testified in his deposition that "no testing has been done, to date, at all," confirming whether the insulation contained asbestos given Defendant's refusal to have a hygienist inspect the property. Dep. of Joseph Kriner at p. 86.

Defendant issued a partial denial letter to Plaintiff on June 29, 2021, indicating that it is unable to provide coverage for any of the claimed damages to Plaintiff's "window on the front elevation, rotted wood on the front elevation, and the gutters on the front elevation" because such damages appeared to not be covered under the Policy.  (ECF No. 42-7).  Defendant then denied coverage for a full roof replacement on October 17, 2021, for the same reason.  (ECF No. 42-9).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party.  *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)).  However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"  *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  Consequently, a party cannot

create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

## III.   DISCUSSION

Defendant argues that Plaintiff cannot succeed on her breach of contract action as a matter of law because she cannot demonstrate that the June 14, 2021, storm caused the damages to Plaintiff's residence underlying Plaintiff's insurance claim, thereby failing to demonstrate that the damage to Plaintiff's residence fell within the scope of the Policy.  (ECF No. 42-1 at 5–6). Specifically, Defendant argues that any opinion regarding causation must be provided by an expert witness, but that Plaintiff "has not named or offered anyone as an expert witness to testify as to the cause of the damage to Plaintiff's residence which need to be repaired."  *Id.* at 5.  Plaintiff rebuts that "This truly is not a dispute of causation this is a dispute of proper scope to repair a covered loss" because Defendant has already conceded that at least some of the damage to Plaintiff's residence resulted from the storm.  (ECF No. 56 at 7–8).  Moreover, Plaintiff asserts that Mr. Kriner may properly testify regarding the damages to Plaintiff's residence for which Defendant denied coverage because he is a "lay-expert contractor [] competent to and intend[ing] to testify as to the correct cost to make repairs to the roof."  *Id.* at 8.  "This in a nutshell forms the basis of the breach of contract argument.  In other words, under a contract of indemnification, the jury may decide what the correct cost will be to make the repairs under the agreed upon covered loss and covered peril."  *Id.*  Put simply, Defendant agreed that some damage to Plaintiff's residence occurred because of the June 14, 2021, storm which falls within the Policy's coverage, but disavowed other damages allegedly resulting from the storm pursuant to Mr. Kriner's investigation and the subsequent Semper Fi estimate.  For example, Defendant contends that only six shingles need to be repaired under the Policy because of the storm, whereas the Semper Fi

estimate seems to set forth values for an entirely new roof along with estimated costs to remediate potential asbestos and repair Plaintiff's "front" and "back" elevations to her residence, deck, gutters, windows, and more.

"Our primary task in interpreting an insurance policy, as with any contract, is to apply the terms of the contract itself." *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 305 (2000). "We look first to the contract language employed by the parties to determine the scope and limitations of the insurance coverage." *Id.* (citing *Chantel Assoc. v. Mount Vernon Fire Ins. Co.*, 338 Md. 131 (1995)). It is undisputed that the Policy provides coverage for damage to Plaintiff's residence resulting from windstorms and hail. (ECF No. 42-2). The issue then becomes whether, as a matter of law, Plaintiff cannot demonstrate that any alleged damages aside from the six shingles and roof stain resulted from the June 14, 2021, storm and thus fall within the Policy's coverage.

Plaintiff's representation of this issue is somewhat inaccurate. While Mr. Kriner does set forth the alleged repair costs provided for in the Semper Fi estimate, Defendant disputes whether the alleged damages to Plaintiff's residence set forth in the $121,696.75 estimate resulted from the June 14, 2021, storm (which would presumably be covered under the Policy) or whether they are a product of normal wear and tear or any other occurrence not covered under the Policy. *See* (ECF No. 42-2 at 10–11) (describing non-covered losses under the Policy, including "loss consisting of or caused by mold, fungus, wet rot, dry rot or bacteria" and loss by reason of "wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect").

Defendant argues that an expert witness is required to opine on the cause of potentially covered damages under an insurance contract. Plaintiff rebuts that "An expert is not required for a jury to come to a conclusion, that the carrier was made aware of a risk, did not act in due diligence to gain the knowledge that they should have known to make a reasonable assessment of the facts,

6

nor does the jury need an expert to determine that the carrier, knowingly and intentionally endangered the family living in the property." (ECF No. 56 at 5–6). This argument speaks to Defendant's decision to not have Plaintiff's residence tested for asbestos; it overlooks Defendant's argument that the cause of damages suggested throughout Semper Fi's estimate was not from a covered peril. Further, the only evidence submitted by Plaintiff in connection with this motion is eight pages from Mr. Kriner's deposition transcript, in which Mr. Kriner states that: (1) he has "Eight years plus or minus" experience as a public adjuster; (2) he refused to answer questions regarding whether his public adjuster's license has ever been suspended or revoked but also acknowledged that his "license is being represented by [his] counsel, by his attorney";[3] (3) he believed asbestos was present in Plaintiff's residence; and (4) Defendant refused to hire a hygienist. (ECF No. 56-2 at 2–3).

Although neither party presents mandatory authority regarding whether an expert witness is required to opine on the cause of property damages in this specific context, the Court agrees with Defendant that such expert testimony is required. As a preliminary matter, Maryland courts have made clear that a plaintiff bears the burden of establishing coverage under an insurance policy:

> When determining whether an action is covered within the scope of an insurance policy, Maryland courts employ a three-part burden-shifting scheme[.] First, the burden of proving entitlement to insurance benefits lies with the insured. Second, the insurer must demonstrate that the policy excludes coverage of the claim. Third, if the insurance company prevails in showing that the claim is excluded, the insured must prove the applicability of an exception to the exclusion.

*Nautilus Ins. Co. v. 200 W. Cherry St., LLC*, 383 F. Supp. 3d 494, 512 (D. Md. 2019) (quotations and citations omitted); *see also Alpha Cons. & Engineering Corp. v. Ins. Co. of Pa.*, 402 F. App'x

---

[3] Defendant provides citations to various purported Maryland civil and criminal cases currently pending against Mr. Kriner regarding Mr. Kiner's alleged "failure to perform a contract and even felony theft charges." (ECF No. 59 at 2 n.1).

818, 831 (4th Cir. 2010) ("The initial burden of proof is placed upon an insured seeking coverage under a policy's insuring language."); *Harford Cnty. v. Harford Mut. Ins. Co.*, 327 Md. 418, 436 (1992) ("The burden to show that property damage occurred within the coverage of the policies is, of course, upon the insured.").  This is in line with the bulk of other jurisdictions.  *See, e.g.*, *One Way Invs., Inc. v. Century Sur. Co.*, No. 3:14-CV-2839-D, 2016 WL 5122124, at *2 (N.D. Tex. Sept. 21, 2016) ("An insured cannot recover under an insurance policy unless the insured pleads and proves facts that show that its damages are covered by the policy."); *Graspa Consulting, Inc. v. United Nat'l Ins. Co.*, 515 F. Supp. 3d 1249, 1254 (S.D. Fla. 2021) ("A person seeking to recover on an insurance policy has the burden of proving a loss from causes within the terms of the policy[,] and if such proof of loss is made within the contract of insurance, the burden is on the insurer to establish that the loss arose from a cause that is excepted from the policy."); *Miller v. Monumental Life Ins. Co.*, 376 F. Supp. 2d 1238, 1247 (D.N.M. 2005), *rev'd on other grounds*, 502 F.3d 1245 (10th Cir. 2007) ("An insured cannot recover under an insurance policy unless the insured pleads and proves coverage for his claim under the insurance policy."); *St. Tammany Par. Hosp. Serv. Dist. No. 2 v. Zurich Am. Ins. Co.*, 593 F. Supp. 3d 399, 406 (E.D. La. 2022); *10E, LLC v. Travelers Indem. Co. of Conn.*, 483 F. Supp. 3d 828, 836–38 (C.D. Cal. 2020).

The issue then becomes whether Plaintiff, as the insured, has set forth sufficient evidence that the property damage she seeks compensation for—the damages provided in the Semper Fi estimate—occurred within the Policy's coverage, *i.e.* that the damages in the Semper Fi estimate resulted from a wind or hailstorm rather than normal deterioration or otherwise.  Although Defendant does not provide any citations to Maryland state or law from this Court requiring an expert to draw such a causal connection, the Court concludes that under the factual circumstances

of this case, Plaintiff is required to prove such allegations through an expert witness but has failed to do so.

"Expert testimony is required when the subject matter is so particularly related to some science or profession that it is beyond the ken of the average layman." *Adams v. NVR Homes, Inc.*, 142 F. Supp. 2d 649, 654 (D. Md. 2001).  Thus, "Courts frequently hold that lay witnesses cannot testify regarding causation where determining the cause of a particular incident or occurrence is beyond common experience." *Hovsepian v. State Farm Mut. Auto. Ins. Co.*, No. CV0908929MMMPLAX, 2011 WL 13213900, at *10 (C.D. Cal. Jan. 12, 2011); *see also id.* (collective cases nationwide for the same proposition).  In the context of determining whether property damage falls within the scope of an insurance policy, Maryland's highest court has held that "the determination of the amount of property damage, to ascertain whether it falls within policy coverage, is quite likely a matter for expert testimony." *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 355 Md. 566, 588 (1999); *see also Harford Cnty.*, 327 Md. at 436.

This Court has since recognized that expert testimony is required to establish the specific cause of property damage where the alleged property damage is the subject of technical knowledge and may or may not fall within a homeowners insurance policy.  *See Norris v. PNC Bank, N.A.*, No. CV ELH-20-3315, 2023 WL 3688335, at *21 (D. Md. May 26, 2023).  This conclusion is bolstered by Maryland case law in other contexts, such as that requiring expert testimony in cases involving (1) the diminution of property value caused by environmental phenomena and (2) causation of damages in medical malpractice actions.  *See, e.g.*, *Exxon Mobil Corp. v. Ford*, 433 Md. 426, 478 (2013), *as supplemented on denial of reconsideration*, 433 Md. 493 (2013); *FZata Inc. v. Guan*, No. 1385, Sept. term, 2021, 2023 WL 8053056, at *31 (Md. App. Ct. Nov. 21, 2023), *cert. denied*, 486 Md. 400 (2024); *Rodriguez v. Clarke*, 400 Md. 39, 71 (2007).

Turning to federal persuasive authority on the issue, Defendant accurately identifies that an abundance of jurisdictions require expert testimony to establish the cause of property damages within the scope of a homeowners insurance policy under similar situations. *See, e.g.*, *One Way Invs., Inc.*, 2016 WL 5122124, at *2 ("It is essential that the insured produce evidence which will afford a reasonable basis for estimating the amount of damage or the proportionate part of damage caused by a risk covered by the insurance policy . . . Neither report provides evidence from which a reasonable jury could allocate damage from wear and tear, poor construction, or any other causes, on the one hand, and allocate damage from wind and hail, on the other hand.  Accordingly . . . [Defendant] is entitled to summary judgment dismissing [Plaintiff's] breach of contract claim."); *Brown v. State Farm Fire & Cas. Co.*, 358 F. Supp. 3d 1265, 1273 (N.D. Ala. 2018), *opinion clarified*, 342 F. Supp. 3d 1234 (N.D. Ala. 2018) (concluding that "only expert testimony is permitted" in determining causation of property damages under insurance policy); *Palm Bay Yacht Club Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-23685-CIV, 2012 WL 1345317, at *5 (S.D. Fla. Apr. 18, 2012) (concluding that "The cause of damage to a building component is [] outside the common knowledge of the average juror" in determining coverage under an insurance policy); *Jackson v. State Farm Fire & Cas. Co.*, No. 1:23-CV-24-HSO-BWR, 2024 WL 1183670, at *7 (S.D. Miss. Mar. 19, 2024) ("This Court has explained how structural damages to homes, the long-term effects of moisture on a house, and other categories of property damage require expertise to accurately understand, and are therefore not properly the subject of lay opinion on causation . . . Accordingly, the Court will also grant summary judgment as to any items for which Plaintiffs lack admissible lay testimony to establish causation."); *Revocable Tr. Agreement of Randall S. Ellis & Teri L. Ellis v. State Farm Fire & Cas. Co.*, 614 F. Supp. 3d 963, 985 (N.D. Okla. 2022) (concluding that lay witnesses "may not testify definitively that, based on the language

and construction of the subject policy, plaintiffs' damage is covered"); *Finlinson v. Safeco Ins. Co. of Am.*, No. 220CV00742DBBCMR, 2023 WL 184203, at \*4–5 (D. Utah Jan. 13, 2023); *Kemmerer v. State Farm Ins. Co.'s*, No. CIV.A. 01-5445, 2004 WL 87017, at \*2–3 (E.D. Pa. Jan. 19, 2004) ("Plaintiff bears the burden of proving that the damage caused to her personal property resulted from the occurrence of a specified peril as outlined in the policy . . . Without a contrary expert conclusion [that the property damage at issue was caused by a covered peril], Plaintiff fails to adequately establish that a numerated specified peril under the homeowner's policy caused the mold infestation and resulting property damage.  She does not satisfy her burden of establishing a genuine material issue for trial."); *see also Coates v. Metro. Prop. & Cas. Ins. Co.*, 625 F. Supp. 3d 347, 359 (E.D. Pa. 2022) ("In turn, a licensed public adjuster's 'expertise at identifying and estimating the cost to repair damage is not expertise at identifying the cause of the damage.'") (quoting *Balu v. Cincinnati Ins. Co.*, No. CV 19-3604, 2021 WL 1427651, at \*3 (E.D. Pa. Apr. 15, 2021)); *Wickman v. State Farm Fire & Cas. Co.*, 616 F. Supp. 2d 909, 922 (E.D. Wis. 2009); *Midtown Invs., LP v. Auto-Owners Ins. Co.*, 641 F. Supp. 3d 1066, 1080–81 (D. Colo. 2022).

Here, Plaintiff did not designate any expert witnesses.  It was unclear from the parties' initial pleadings whether Plaintiff designated Mr. Kriner—the only individual whose opinion is discussed in Plaintiff's opposition—as an expert in this case.  The Court accordingly directed Plaintiff to submit a copy of all expert disclosures made under Rule 26(a)(2) to aid in analyzing the present motion.  (ECF No. 60).  The only disclosures Plaintiff provided pursuant to that order read as follows:

1. In response to inquiries made by Defense counsel during the depositions of Plaintiff Erika Pryszmont and her retained public adjuster, Joseph Kriner, P.A. on January 29, 2024, and consistent with the information disclosed therein and reservations of rights contained within Ms. Pryszmont's Answers to Defendant's Interrogatory Nos. 4 and 5, as well as her Responses to Defendant's Request for Production of Documents, Plaintiff, at her expense, retained Environmental Solutions, Inc. to

perform an asbestos evaluation at her home, and if applicable, to prepare an asbestos remediation protocol in support of her claims herein. Defendant was advised in advance of this inspection (which took place on February 9, 2024), and was invited to have an inspector of its choice present that day. Defendant chose not to do so.

2.  In light of the foregoing, Plaintiff reserves the right to rely upon the testimony of a representative of Environmental Solutions, Inc. to describe its inspection, laboratory analysis and asbestos protocol, if any, to be relied upon by Plaintiff's remediation contractor, Rapid Restoration.

(ECF No. 61-2).

Plaintiff's Rule 26 disclosures were due by November 15, 2023.  (ECF No. 29).  Not only is there no indication that Plaintiff made any expert disclosures before that deadline, but the above disclosure was not provided to Defendant until March 12, 2024, the day after Defendant filed its motion for summary judgment.  Further, Plaintiff conceded in her December 28, 2023, written discovery responses (more than one month after the Rule 26 disclosure deadline) that Plaintiff had "No retained experts at [that] time.  Plaintiff will rely upon her public adjuster to establish her entitlement to full and proper indemnification for the damages caused to her home as a result of the occurrence."  (ECF No. 51-2 at 3).  It is also worth noting that the above disclosure indicates that the asbestos inspection did not occur until almost three years after the purported June 14, 2021, storm.  Defendant also claimed in its present motion that Defendant had not received a copy of that Environmental Solutions, Inc. report as of March 27, 2024, which Plaintiff does not rebut in her opposition.  *See* Fed. R. Civ. P. 56(e).

With the foregoing authority in mind, the Court concludes that an expert witness is necessary to opine on whether the damages set forth in the Semper Fi estimate were caused by the June 14, 2021, storm and therefore fall within the Policy's scope.  Particularly in light of the dozens of photographs submitted with Defendant's motion which denote seemingly slight impurities in Plaintiff's residence and roof, it would be "beyond the ken of the average layman" to conclude

that any particular non-perfections of Plaintiff's residence were the result of the June 14, 2021, storm rather than normal wear and tear or any other non-covered event. *Adams*, 142 F. Supp. 2d at 654. And because Plaintiff failed to designate any expert witnesses regarding causation in this case (or otherwise), Plaintiff has provided no support for her claims that any damages to her residence beyond the damages identified by Defendant fall within the Policy's coverage and that Defendant was therefore required to cover such damages. Accordingly, summary judgment is granted in favor of Defendant to the extent that neither Mr. Kriner—nor any other witness—may opine that any damages to Plaintiff's residence beyond that which Defendant identified coverage for resulted from the June 14, 2021, storm and that such damages are covered by the Policy.

The Court's inquiry does not end there. Although Plaintiff cannot, as a matter of law, establish that any damages beyond those identified by Defendant fall within the Policy's scope, Plaintiff argues that her case may proceed by virtue of Mr. Kriner opining as a lay witness regarding the proper cost of repairs to Plaintiff's residence. Plaintiff presents no authority supporting this proposition in the face of Defendant's citations to various persuasive authorities holding otherwise. In fact, Plaintiff's opposition does not contain a single citation to any authority supporting this proposition despite Defendant providing ample persuasive authority on this issue in both their initial and supplemental motion for summary judgment. *See generally* (ECF No. 56).

After reviewing relevant case law on the matter, the Court agrees with Defendant. The overwhelming majority of federal courts to consider this issue have held that repair cost estimates in breach of insurance contract cases must be supported by expert, rather than lay, opinions. *See, e.g.*, *Hart v. State Farm Lloyds*, No. 3:22-CV-01367-N, 2024 WL 310539, at *2 (N.D. Tex. Jan. 25, 2024) ("[A]n estimate to repair property damage requires specialized knowledge of construction and repair work and therefore is based on specialized knowledge within the scope of

13

Rule 702. Accordingly, a lay witness cannot testify about estimated repair costs. A repair cost estimate requires, at minimum, [a witness] to forecast the amount, type, and costs of materials needed, as well as the amount of labor required to complete the long list of repairs. These forecasts are not common knowledge."); *Wickman*, 616 F. Supp. 2d at 922 (determining plaintiff could not prevail on breach of contract claim against insurance company in part because plaintiff set forth no expert evidence supporting the notion that insurance company's estimate "was insufficient to satisfy its obligation under the insurance contract"); *Pendarvis v. Am. Bankers Ins. Co. of Fla.*, 354 F. App'x 866, 869 (5th Cir. 2009) ("Young's repair costs estimate required, at a minimum, Young to forecast the amount, type, and costs of materials needed, as well as the amount of labor required to complete the long list of repairs. These forecasts are not common knowledge, familiar in everyday life. They require specialized knowledge of construction and repair work."); *Providence Piers, LLC v. SMM New England, Inc.*, No. CV 12-532S, 2015 WL 9699936, at *8 (D.R.I. Oct. 1, 2015), *report and recommendation adopted*, No. CV 12-532 S, 2016 WL 126742 (D.R.I. Jan. 11, 2016) ("[C]ourts overwhelmingly hold that estimating the cost of a complex repair requires the forecasting of the amount, type and costs of materials and labor, which are not common knowledge or familiar in everyday life; accordingly, predicting future repair costs requires specialized knowledge and is expert, not lay, testimony."); *St. Panteleimon Russian Orthodox Church, Inc. v. Church Mut. Ins. Co.*, No. 13-CV-1977 SRN/HB, 2015 WL 283044, at *7 (D. Minn. Jan. 22, 2015); *Jackson v. State Farm Fire & Cas. Co.*, No. 1:23-CV-24-HSO-BWR, 2024 WL 965613, at *11 (S.D. Miss. Mar. 6, 2024); *Jeanes v. McBride*, No. CV 16-1259, 2019 WL 2622466, at *3 (W.D. La. June 25, 2019) ("If repair cost estimates are introduced into evidence, they must be the subject of expert testimony."); *Montalvo v. Am. Fam. Mut. Ins. Co.*, No. CV-12-02297-PHX-JAT, 2014 WL 2986678, at *5–6 (D. Ariz. July 2, 2014) ("Mr. Settell's

opinion testimony as to the cost of repairing Plaintiffs' house requires him to give his expert opinion as to the cost of such repairs.  His testimony expresses an opinion as to the estimated cost and is based upon his experience as an insurance adjuster, as he attests in his declaration . . . In this case, however, Mr. Settell's testimony regarding the estimate repair costs falls within the scope of specialized knowledge.  Plaintiffs may not attempt to evade FRE 702's requirements through the simple expedient of proffering an expert in lay witness clothing.") (quotations omitted); *Dennis v. Allstate Ins. Co.*, No. CIV.A. 10-795, 2012 WL 6045912, at *2–3 (E.D. La. Dec. 5, 2012) (excluding "testimony relating to estimates of damages and any estimates of damages that were not accompanied by an expert report").  While it is true that some cases have indicated exceptions to this principle—such as when a witness testifies as to what their own company would charge to conduct certain repairs—Plaintiff sets forth no argument or evidence that any such exceptions apply here.  *See, e.g.*, *Providence Piers, LLC*, 2015 WL 9699936, at *8; *Steffy v. Home Depot, Inc.*, No. 1:06-CV-02227, 2009 WL 4279878, at *9 (M.D. Pa. June 15, 2009).[4]

Plaintiff also argues that Defendant improperly refused to have Plaintiff's residence tested for asbestos.  However, Maryland courts have made clear that "A contractual obligation, by itself, does not create a tort duty.  Instead, the duty giving rise to a tort action must have some independent basis."  *Mesmer v. Md. Auto. Ins. Fund*, 353 Md. 241, 253 (1999).  "While a tort action in favor of

---

[4] The cases in which courts have allowed lay testimony regarding repair costs under similar circumstances predominantly involve situations where either (1) contractors sought to testify regarding their firsthand knowledge of the repair costs that they or their companies would charge to repair identified damages, or (2) witnesses sought to testify regarding the costs of repairs already completed.  *See Steffy*, 2009 WL 4279878, at *9 (collecting cases).  Here, Plaintiff sets forth no evidence or argument supporting that either situation is implicated here.  Rather, the evidence submitted in connection with the present motion indicates that at least some of the Semper Fi estimate was made without Mr. Kriner's personal knowledge of the underlying justification for certain repair costs such as the cost to remediate the supposed asbestos in Plaintiff's residence.  *See, e.g.*, Dep. of Joseph Kriner at p. 84.  Further, Plaintiff's own argument seems to undercut itself.  Plaintiff argues—without supporting authority—that "the costs of construction do not require scientific knowledge and a lay person may testify to this fact, *provided they have the experience to do so*," suggesting that Mr. Kriner may testify regarding repair costs based on his specialized experience as a public adjuster.  (ECF No. 56 at 7) (emphasis added).

a contracting party can be founded upon a duty arising out of the contractual relationship, . . . the duty giving rise to the tort cause of action must be independent of the contractual obligation . . . Mere failure to perform a contractual duty, without more, is not an actionable tort." *Wilmington Trust Co. v. Clark*, 289 Md. 313, 328–29 (1981).  The *Mesmer* court further explained that:

> There is no single principle or simple test for determining when a defendant's breach of contract will also breach an independent duty and give rise to a tort action. Nevertheless, when the dispute is over the existence of any valid contractual obligation covering a particular matter, or where the defendant has failed to recognize or undertake any contractual obligation whatsoever, the plaintiff is ordinarily limited to a breach of contract remedy.

*Mesmer*, 353 Md. at 254.

Here, Plaintiff provides no indication that Defendant's failure to have her residence tested for asbestos violated any independent duty of Defendant to facilitate such testing.  Rather, Plaintiff essentially asserts that such asbestos remediation fell within the Policy's coverage by virtue of occurring as the result of a covered peril for which Defendant was obligated to provide insurance coverage, and that Defendant acted in bad faith by failing to facilitate such asbestos testing.  But then Plaintiff runs into the same issue discussed above because Plaintiff has offered no expert testimony indicating that Plaintiff's residence did, in fact, contain asbestos at all, or, even if Plaintiff's residence did contain asbestos, that the necessity of remediating such asbestos was caused by a covered peril under the Policy for which Defendant was required to provide coverage. Concluding that insulation contains asbestos is certainly beyond the knowledge of an average individual, particularly where the insulation in question was not tested contemporaneously with its discovery.  Beside the fact that Mr. Kriner was never tendered as an expert in this case, Mr. Kriner himself testified that he could not definitively conclude that asbestos was present in Plaintiff's residence during his inspection.  Dep. of Joseph Kriner at p. 75.  Plaintiff's supplemental discovery disclosures fare no better, as they highlight only that (1) the asbestos testing was completed on

February 9, 2024, several years after its purported discovery, and (2) Plaintiff never properly designated any representative of Environmental Solutions, Inc. as an expert witness to testify regarding inspecting Plaintiff's residence for asbestos and the resulting testing procedures and results.  (ECF No. 61-2 at 1).  And there has been no expert testimony that the storm somehow acted to mandate the remediation of the asbestos as a covered loss.  Accordingly, Plaintiff has not set forth a genuine dispute of material fact suggesting that Defendant owed an independent duty to have Plaintiff's residence tested for asbestos, nor has Plaintiff set forth proper evidence supporting the notion that any purported asbestos in Plaintiff's residence triggered Defendant's obligations under the Policy supporting Plaintiff's breach of contract claim.  More generally, because Plaintiff has not set forth sufficient evidence supporting her breach of contract claim, Defendant is also entitled to summary judgment regarding Plaintiff's bad faith claim in Count II. *See Barry v. Nationwide Mut. Ins. Co.*, 298 F. Supp. 3d 826, 830 (D. Md. 2018) ("An allegation of breach of contract is therefore a necessary but not sufficient condition for a lack of good faith claim [under Md. Code Ann., Cts. & Jud. Proc. § 3-1701].  An insured must prove that an insurer breached the insurance contract in order to bring a lack of good faith claim, but the insured must prove more than simply breach of contract to prevail.")*; Cecilia Schwaber Tr. Two v. Hartford Acc. & Indem. Co.*, 636 F. Supp. 2d 481, 488 n.6 (D. Md. 2009).

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF Nos. 42, 51) is **GRANTED** and the Clerk of the Court is asked to close this case.


Date: <u>June 21, 2024</u>                                  <u>              /s/              </u>
                                                          J. Mark Coulson
                                                          United States Magistrate Judge